**Opinion issued December 22, 2015**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-14-00417-CV

———————————

## NICK YEH, INDIVIDUALLY; ASHDON, INC. D/B/A IMPRESSION BRIDAL; AND EMME BRIDAL, INC., Appellants/Cross-Appellees

### V.

## ELLEN CHESLOFF, Appellee/Cross-Appellant

---

**On Appeal from the 268th District Court
Fort Bend County, Texas
Trial Court Case No. 09-DCV-174184**

---

### O P I N I O N

In this employment dispute, we determine whether a late-filed charge of discrimination relates back to an employee's earlier intake questionnaire when the employee disavowed in the questionnaire that it was a charge of discrimination.

Following federal law, we conclude that a late-filed charge does not relate back to the questionnaire. Because the charge that formed the basis for her state court suit was not timely, we hold that the trial court erred in entering judgment in favor of the employee. Accordingly, we reverse and render.

**BACKGROUND**

From 2006 to June 2009, Ellen Chesloff was employed as a general manager and independent sales representative of a bridal gown wholesaler, Ashdon, Inc. d/b/a Impression Bridal. She also worked as a sales representative for Emme Bridal, Inc., another gown wholesaler. Nick Yeh is the president and chief executive officer of Impression Bridal; his brother, Mike, who is not a party to this appeal, owns Emme.

Both companies design, manufacture, and sell bridal gowns and formal dresses to retailers. During Chesloff's employment, the Yeh brothers subjected her to vulgar sexual banter and behavior as well as crude text messages and emails. The last such communication, Chesloff testified, was through an email that she received on March 30, 2009.

Chesloff's last day of work for both companies was on June 5, 2009. Several days later, Nick Yeh texted Chesloff, stating that he knew that she was planning a trip to Los Angeles to interview with a competitor. Yeh told her to cancel the interview; if she did not, he threatened "the biggest lawsuit" that she had ever seen. Later that morning, Yeh sent Chesloff another text message, informing her that she

2

could no longer avoid a lawsuit by cancelling the interview.  In August 2009, Yeh, Impression, and Emme filed a defamation suit against Chesloff.

After the defamation suit was filed against her, Chesloff completed an Equal Employment Opportunity Commission ("EEOC") intake questionnaire, which the EEOC received by mail on September 24.  The questionnaire asked details about Chesloff's employment and the facts relating to any discriminatory conduct.  Immediately before the questionnaire's signature block, the following text appears (emphasis in the original):

> Please check one of the boxes below to tell us what you would like us to do with the information you are providing on this questionnaire.  If you would like to file a charge of discrimination, you must do so within either 180 or 300 days from the day you knew about the discrimination.  The amount of time you have depends on whether the employer is located in a place where a state or local government agency has laws similar to the EEOC's laws.  **If you do not file a charge of discrimination within the time limits, you will lose your rights.  If you want to file a charge, you should check Box 1, below.  If you would like more information before deciding whether to file a charge or you are worried or have concerns about EEOC's notifying the employer . . . about your filing a charge, you may wish to check Box 2, below**.

Box 1

> I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above.  I understand that **the EEOC must give the employer . . . that I accuse of discrimination information about the charge, including my name**.   I also understand that the EEOC can only accept charges of job discrimination based on race, color, religion, sex, national origin, age, or retaliation for opposing discrimination.

☐

Box 2

> I want to talk to an EEOC employee before deciding whether to file a charge of discrimination. I understand that by checking this box, I have not filed a charge with the EEOC. I also understand that I could lose my rights if I do not file a charge in time.

☐

Chesloff marked Box 2, indicating that she wanted to talk to an EEOC employee before deciding whether to file a charge of discrimination.

On October 6, the EEOC wrote to Chesloff, confirming receipt of the intake questionnaire.  The EEOC enclosed (1) a brochure entitled "What You Should Know Before You File a Charge with EEOC"; and (2) an EEOC Form 5, Charge of

4

Discrimination, containing the information that Chesloff had provided in her intake questionnaire. The letter cautioned:

> Please be advised that a charge is not filed with the EEOC until you have done the following **within 30 days from the date of this letter**:
>
> (1)    Review the Form 5, Charge of Discrimination, and make any necessary corrections or deletions;
> (2)    Sign and date the charge on the bottom left hand block identified by an "X"; and
> (3)    Notarize (optional) and return the signed charge to this office.

(Emphasis in the original). On October 28, Chesloff signed the Charge of Discrimination form, wrote "Please issue 'right to sue' letter ASAP," on the bottom of the form, and returned it to the EEOC. The EEOC received the charge on October 30 and issued a right to sue letter on November 25, 2009.

The following February, Chesloff counterclaimed against Yeh and her company employers in the pending defamation lawsuit, claiming sex discrimination, sexual harassment, and retaliation against her, in violation of Chapter 21 of the Texas Labor Code, and intentional infliction of emotional distress.

Yeh and the gown companies filed a plea to jurisdiction, contending that Chesloff had failed to meet Chapter 21's statutory prerequisites to suit because her charge of discrimination was not filed within 180 days of the last complained-of discriminatory act. The trial court denied the plea. Yeh and the companies then moved for summary judgment, renewing their contention that Chesloff's charge of

5

discrimination was untimely, and thus she had failed to properly exhaust her administrative remedies. The trial court denied the motion.

The case proceeded to a jury trial, both on Yeh and the companies' claims of defamation and Chesloff's counterclaims of discrimination and intentional infliction of emotional distress. The jury found against Yeh and the companies on their defamation claims. It found in favor of Chesloff on her hostile work environment, sexual harassment, and intentional infliction of emotional distress claims, but it found against Chesloff on her claim of retaliation for reporting discriminatory conduct. Yeh and the gown wholesalers timely moved for a judgment notwithstanding the verdict, again contending that Chesloff had failed to timely file a charge of discrimination, and further asserting that legally insufficient evidence existed to support her intentional infliction of emotional distress claim. The trial court granted the motion with respect to Chesloff's intentional infliction of emotional distress claim. It entered judgment on the jury's verdict on Chesloff's sexual harassment claims.

Chesloff moved post-trial for back pay, attorney's fees, and costs under Chapter 21. The trial court denied her request for back pay and awarded one-third of the attorney's fees requested.

## DISCUSSION

6

Both parties appeal parts of the trial court's judgment. Yeh and the gown wholesalers contend that the trial court erred in denying their motion for judgment notwithstanding the verdict on Yeh's sexual harassment claims because Chesloff failed to comply with the Labor Code's 180-day requirement. Chesloff appeals the trial court's denial of her request for back pay and its decision to award her less than the amount of attorney's fees she requested. Chesloff does not appeal the trial court's disposition of her intentional infliction of emotional distress claim or the adverse jury verdict on her retaliation claim, and Yeh and the wholesalers do not appeal the adverse disposition of their claims against Chesloff.

## I.     Applicable Law and Standard of Review

Under Chapter 21, a claimant must exhaust her administrative remedies before filing a civil action for employment discrimination. *Schroeder v. Tex. Iron Works, Inc.*, 813 S.W.2d 483, 488 (Tex. 1991), *overruled on other grounds*, *In re United Servs. Auto Ass'n*, 307 S.W.3d 299, 310 (Tex. 2010). The timely filing of an administrative complaint is a mandatory prerequisite to filing suit. *Specialty Retailers, Inc. v. DeMoranville*, 933 S.W.3d 490, 492 (Tex. 1996). To meet this exhaustion requirement, a claimant must file a sworn, written complaint with the EEOC or the Texas Workplace Commission (TWC) within 180 days of the alleged

discriminatory act.  TEX. LAB. CODE ANN. §§ 21.201–21.202 (West 2015);[1]

*Specialty Retailers*, 933 S.W.2d at 492–93 (explaining 180-day period commences on date alleged unlawful employment practice occurred, not when plaintiff feels effect of decision).

We frame the issue regarding a failure to comply with Chapter 21's administrative exhaustion requirement as a defense to liability, rather than a jurisdictional bar, mindful that the Texas Supreme Court's decision in *Prairie View A&M University v. Chatha* raises questions about whether the failure to satisfy Chapter 21's administrative exhaustion requirement implicates trial court jurisdiction in a suit between private parties.  *See* 381 S.W.3d 500, 510–11 (Tex. 2012); *compare Schroeder,* 813 S.W.2d at 488 (holding that failure to comply with the 180-day deadline for filing a charge is a jurisdictional bar, even in suits between private parties, because Texas Commission on Human Rights Act does not provide an unconditional private right of action) *with Henderson v. Shinseki*, 562 U.S. 428, 434–36, 131 S. Ct. 1197, 1202–03 (2011) (observing the need to exercise some discipline over labeling procedural rules as "jurisdictional" absent clear congressional indication that it is the case) *and Zipes v. Transworld Airlines, Inc.*,

---

[1]  "A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent" to satisfy Chapter 21's administrative exhaustion requirement.  *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 504 n.4 (Tex. 2012).  Chesloff filed with the EEOC.

455 U.S. 385, 393, 102 S. Ct. 1127, 1132 (1982) (filing timely charge of discrimination with EEOC is not a jurisdictional prerequisite to a federal suit but a bar to recovery, subject to waiver, estoppel, and equitable tolling). The defendants in this case raised the failure to comply with the 180-day deadline in a plea to the jurisdiction as well as in a motion for summary judgment and a motion for a directed verdict; they continued to object to the submission of the claim to the jury and to the judgment on this basis; thus, they preserved their defense, whether it is a jurisdictional bar or a defense that must be raised when a plaintiff fails to allege and prove compliance with the administrative exhaustion requirement. *See id.*

Accordingly, we apply a legal sufficiency standard applicable to denial of a directed verdict based on a lack of evidence. *City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Applying that standard, we will sustain a challenge to the legal sufficiency of the verdict under review when (1) there is a complete absence of evidence of a vital fact, (2) the court is barred by rules of law or evidence from giving weight to the only evidence offered to prove a vital fact, (3) the evidence offered to prove a vital fact is no more than a mere scintilla, or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch, Inc. v. Chapman,* 118 S.W.3d 742, 751 (Tex. 2003); *City of Keller,* 168 S.W.3d at 810.

II.    Analysis

In this case, the following facts relevant to whether Chesloff timely filed her sexual harassment claims are undisputed:

- The last incident of sexual harassment alleged in Chesloff's charge of discrimination and subsequent suit occurred on March 30, 2009.

- The defamation suit against Chesloff was filed on August 18, 2009 (the suit also provided the basis for Chesloff's retaliation claim, which the jury rejected).

- The EEOC received Chesloff's intake questionnaire on September 24, 2009—179 days after the last alleged incident of sexual harassment and 38 days after the suit against Chesloff was filed.

- The EEOC received Chesloff's Charge of Discrimination on October 30, 2009—214 days after the last alleged incident of sexual harassment and 73 days after the suit against Chesloff was filed.

We consider the legal significance of these dates in calculating the 180-day statutory deadline.

### A. The EEOC intake questionnaire was not a complaint of discrimination as required by statute.

"A claimant may file a complaint with either the EEOC, the federal agency authorized to investigate charges of discrimination, or the TWC, the Texas equivalent," to satisfy Chapter 21's administrative exhaustion requirement. *Chatha*, 381 S.W.3d at 504 n.4. Chesloff filed her charge of discrimination with the EEOC on October 30, 2009. The last date that Chesloff alleged that she was subjected to an incident involving sexual harassment was March 30, 2009, outside the 180-day

10

timeframe. Chesloff's EEOC intake questionnaire, however, was filed on September 24, 2009, 179 days following the last alleged incident of sexual harassment. Chesloff contends that her intake questionnaire satisfies the requirement that she timely file an administrative complaint.

On that questionnaire, however, Chesloff checked Box 2, thereby declaring that she sought assistance from an EEOC employee before deciding whether to file a charge of discrimination, that she understood that checking the box meant she was not filing a charge with the EEOC, and that she understood she could lose her rights if she did not file a charge in time.

The inclusion of the Box 1/Box 2 choice on the EEOC intake questionnaire filed by Chesloff came about after the United States Supreme Court's decision in *Federal Express Corp. v. Holowecki*, 552 U.S. 389, 128 S. Ct. 1147 (2008). In that case, the Court, tasked with determining whether a plaintiff had timely invoked the EEOC's administrative process, addressed the definition of "charge" under the Age Discrimination in Employment Act (ADEA) as it applied to an earlier version of the EEOC intake questionnaire. *Id.* at 395, 128 S. Ct. at 1153. The Court concluded that the definition it could glean from the existing federal regulations—a written allegation of discrimination including the name of the employer—was insufficient, by itself, to constitute a charge. *Id.* at 397, 128 S. Ct. at 1155. The Court held that an allegation is sufficient to trigger administrative enforcement action—and

11

therefore can be deemed a charge—only when it can be "reasonably construed as a request for the agency to take remedial action to protect the employee's rights or otherwise settle a dispute between the employer and the employee." *Id.* at 402, 128 S. Ct. at 1158.

Noting the EEOC's two distinct statutory functions—to enforce antidiscrimination laws and to disseminate information about those laws to the public—the Court declared that the EEOC needed to have "some mechanism to separate information requests from enforcement requests" to effect the agency's dual functions. *Id.* at 400–01, 128 S. Ct. at 1157. Otherwise, the Court cautioned, to interpret a questionnaire in which the employee indicated she does not wish to file a charge as a charge would make the questionnaire itself misleading and would create substantial uncertainty both for the EEOC and the employee. *Id.* at 401, 128 S. Ct. at 1157. If the EEOC were to treat every intake questionnaire as a charge, the Court observed, employees could be discouraged from seeking information because they might not want the EEOC to disclose the information they provide to their employers. *Id.* at 401, 128 S. Ct. at 1157. The Court urged the EEOC to revise its forms and processes to reduce the risk of misunderstandings by those who seek its assistance. *Id.* at 407, 128 S. Ct. at 1161.

Following *Holowecki*, the EEOC changed the intake form to require employees to clearly express their intent by checking one of two boxes. *Brahmana*

12

*v. Lembo*, No. C–09–00106 RMW, 2010 WL 965296, at *1 (N.D. Cal. Mar. 17, 2010). An intake questionnaire that has a checked Box 1, next to the statement "I want to file a charge of discrimination, and I authorize the EEOC to look into the discrimination I described above," qualifies as a "charge." *Henderson v. Bank of Am., N.A.*, Civ. Action No. 2:14–cv–895, 2015 WL 2374519, at *2 (E.D. Tex. May 15, 2015); *Crevier-Gerukos v. Eisai, Inc.*, Civ. Action No. H–11–0434, 2012 WL 681723, at *8 (S.D. Tex. Feb. 29, 2012) (citing additional unpublished cases in support of proposition). On the other hand, an intake questionnaire that has a checked Box 2, next to the statement "I want to talk to an EEOC employee before deciding to file a charge of discrimination," and "I understand that by checking this box, I have not filed a charge with the EEOC" does not constitute a charge. *See Lugo-Young v. Courier Network, Inc.*, No. 10–CV–3197 (RRM) (LB), 2012 WL 847381, at *6 (E.D.N.Y. Mar. 13, 2012) (holding that, based on plain language in Box 2, plaintiff's intake questionnaire could not be construed as timely EEOC charge); *see also Hawthorne v. Vatterott Educ. Ctrs. Inc.,* No. 09–CV–442–TCK–PJC, 2010 WL 3258560, at *4 (N.D. Okla. Aug. 17, 2010) (indicating that employee could lose rights by checking second box).

We decline Chesloff's request to interpret the EEOC intake questionnaire form differently because she brought her suit under Texas law and not under Title VII. The TWC form, entitled "Employment Discrimination Complaint Form," asks

13

for much of the same information, but it uses a different format. It does not provide the Box 1/Box 2 choice contained in the federal questionnaire: the form is entitled "Complaint." The Texas statute refers to the filing of a "complaint" for purposes of the administrative exhaustion requirement. Chesloff did not file a TWC complaint form with the TWC, for which no question exists concerning its function and purpose. She instead completed the EEOC form with the EEOC. To construe all EEOC intake questionnaires to be TWC "complaints" under Chapter 21 would ignore the statutorily conferred dual purpose that the EEOC has recognized post-*Holowecki*. *See Brahmana*, 2010 WL 965296, at *1. It would frustrate Chapter 21's stated purpose if we were to interpret the EEOC questionnaire contrary to the federal courts' understanding and the EEOC's intent. The Texas Legislature expressly intended for Chapter 21 to "provide for the execution of the policies" of Title VII. TEX. LAB. CODE ANN. § 21.001(1) (West 2015); *see Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 633–34 (Tex. 2012) ("Because one of the purposes of [Chapter 21] is to provide for the execution of the policies of Title VII of the Civil Rights Act of 1964, we have consistently held that those analogous federal statutes and the cases interpreting them guide our reading of [Chapter 21]." (internal quotation omitted)). Both the federal and state equal employment opportunity laws contain administrative procedures for investigation, conciliation, and resolution of discrimination claims without need for litigation. *See* 42 U.S.C. § 2000e-5(b), (f)(1),

14

*cited in Patterson v. McLean Credit Union*, 491 U.S. 164, 180–81, 109 S. Ct. 2363, 2374–75 (1989); TEX. LAB. CODE ANN. § 21.154 (West 2015); *Schroeder v. Texas Iron Works*, 813 S.W.2d 483, 485–86 (Tex. 1991) (explaining that Chapter 21 "establishes a comprehensive administrative review system to carry out the policies embodied in Title VII" and "clearly encourages compliance through voluntary resolution, conference, conciliation, and persuasion—informal processes other than litigation").

When an employee disclaims any intent to file a charge, the request does not trigger any investigation or attempt at a resolution. Allowing the employee to bring suit against her employer without first exhausting those administrative remedies would frustrate the intent behind both federal and state statutory schemes. *See Patterson*, 491 U.S. at 180–81, 109 S. Ct. at 2374–75; *Waffle House, Inc. v. Williams*, 313 S.W.3d 796, 809, 811–12 (Tex. 2010) (holding that claim for sexual harassment exists only under statute, which pre-empts any common law claim based on allegations giving rise to statutory claim; plaintiff cannot evade statutory exhaustion of administrative remedies requirement and other unique features of Chapter 21 by bringing suit under common-law theory); *City of Waco v. Lopez*, 259 S.W.3d 147, 154–55 (Tex. 2008) (declaring that employee could not sidestep Chapter 21's administrative exhaustion requirement by bringing retaliation claim solely under Whistleblower Act and holding that trial court erred in denying city's

plea to jurisdictiom); *see also Holowecki*, 552 U.S. at 401, 128 S. Ct. at 1157 (observing that treating every completed questionnaire as a charge would thwart "Congress's expressed desire that the EEOC [also] act as an information provider and try to settle employment disputes through informal means").

Accordingly, we hold that Chesloff's intake questionnaire did not meet the 180-day deadline for filing a complaint under state law because it was not a charge under federal equal employment opportunity law, and she filed no complaint of discrimination with a federal or state agency within 180 days of the alleged discrimination.

## B.     The relation-back doctrine does not apply.

Chesloff further contends that she satisfied the 180-day requirement because, though her formal charge was filed 215 days after the last alleged instance of harassment, it should relate back to her intake questionnaire.  Section 21.201 of the Labor Code provides:

> (e) A complaint may be amended to cure technical defects or omissions, including a failure to verify the complaint or to clarify and amplify an allegation made in the complaint.

> (f) An amendment to a complaint alleging additional facts that constitute unlawful employment practices relating to or arising from the subject matter of the original complaint relates back to the date the complaint was first received by the commission.

TEX. LAB. CODE ANN. § 21.201(e), (f).  These provisions do not apply to the intake questionnaire.  They expressly require that any amendment relate back to the original

16

"complaint," when filed with the TWC, or charge, when filed with the EEOC. Chesloff's decision to check Box 2 rather than Box 1 meant the difference between the EEOC starting the investigation and notifying the employer of the allegations against it and merely sending out an informational packet to the questionnaire's author. The intake questionnaire, as well as the information and form mailed to Chesloff, alerted her that she had to take additional action to file a complaint, including returning the signed Charge of Discrimination to the EEOC, before the agency could investigate her allegations.

Chesloff relies on several cases in which courts have discussed the relation-back rule, but they are unavailing. In *Texas Department of Public Safety v. Alexander*, 300 S.W.3d 62 (Tex. App.—Austin 2009, pet. denied), each of the 16 plaintiffs had filed a "Charge of Discrimination" with the TWC and the EEOC, but all of the plaintiffs' charges were dated after the 180-day deadline had passed. *Id.* at 73. Like Chesloff here, the plaintiffs in *Alexander* contended that their charges should relate back to the intake questionnaires, which were filed before the deadline. *See id.* The appellate court noted that "timely filed intake questionnaires can sometimes be used to satisfy the timeliness requirement under [Chapter 21]," but the court did not reach the question in that case because the record contained only one plaintiff's undated questionnaire and nothing at all for the other 15 plaintiffs. *Id.*

17

Chesloff also cites *Dallas County Southwestern Institute of Forensic Sciences and Medical Examiner Department v. Ray*, 400 S.W.3d 219 (Tex. App.—Dallas 2013, pet. denied), for the proposition that an employee is entitled to correct technical deficiencies without affecting the timeliness of a charge. In *Ray*, the employee had filed an unsworn complaint that she later corrected through amendment. *Id.* at 222. The parties did not contest whether the employee's amendment related back to her original complaint. *See id.*; *see also* TEX. LAB. CODE ANN. § 21.201(e) (expressly identifying "failure to verify the complaint" as error that can be cured by amendment). The question before the court was whether its jurisdiction was affected by the TWC's failure to comply with the employer notification requirement set forth in section 21.201(g) of the Labor Code. *Id.* (citing TEX. LAB. CODE ANN. § 21.201(g)). The Court held that it was not. *Id.* at 225.

The remaining cases relied on by Chesloff are inapposite because they either involve the TWC complaint form or predate *Holowecki* and the EEOC's subsequent revision to its intake questionnaire. None involves a form like the one that Chesloff used, requiring the employee to declare affirmatively whether she means for the questionnaire to be a charge or not. Because Chesloff's intake questionnaire does not constitute a complaint for purposes of the state equal employment opportunity law, the relation-back doctrine does not apply. *See* TEX. LAB. CODE ANN. § 21.201(e) (providing that complaint may be amended to cure technical defects).

18

**C.     Post-employment conduct does not revive the harassment claim.**

Finally, Chesloff argues that either the date Yeh sent the text message regarding her California interview or the date that Yeh and the gown wholesalers filed suit against her—each of which is fewer than 180 days before she filed her formal charge of discrimination—should toll the start of the 180-day clock for filing her harassment charge.  She points to the continuing violation doctrine, which relieves a plaintiff of establishing that all of the alleged discriminatory conduct occurred within the actionable period if the plaintiff can show that, in addition to acts that otherwise would be time-barred, the conduct continued into the actionable period. *Hunicke v. Seafarers Int'l Union*, No. 14-12-00199-CV, 2013 WL 2444634, at *7 (Tex. App.—Houston [14th Dist.] June 4, 2013, pet. denied) (mem. op.).

The continuing violation doctrine applies to claims showing an organized scheme leading to and including the latest alleged violation. *Santi v. Univ. of Tex. Health Sci. Ctr. at Houston*, 312 S.W.3d 800, 804–05 (Tex. App.—Houston [1st Dist.] 2009, no pet.).  The cumulative effect of the discriminatory practice gives rise to the cause of action. *Davis v. AutoNation USA Corp.*, 226 S.W.3d 487, 493 Tex. App.—Houston [1st Dist.] 2006, no pet.).  Incidents giving rise to a hostile environment sexual harassment claim frequently involve the continuing violation doctrine, because the plaintiff must show that the employer's inherently offensive conduct altered the "terms, conditions, or privileges of employment" so severely or

pervasively that it created an abusive working environment. *See* TEX. LAB. CODE ANN. § 21.051(1) (West 2015); *San Antonio Water Sys. v. Nicholas*, 461 S.W.3d 131, 138 (Tex. 2015).

A Chapter 21 claimant's lawsuit, however, is limited to claims that were included in the administrative charge and to factually related claims that could reasonably be expected to grow out of the agency's investigation of the claims stated in the charge. *See Santi*, 312 S.W.3d at 805. We liberally construe the administrative charge to determine whether it contains an adequate factual basis to put the employer on notice of the existence and nature of the charges. *Id.*; *Bartosh v. Sam Houston State Univ.*, 259 S.W.3d 317, 321 (Tex. App.—Texarkana 2008, pet. denied). We may not construe the charge to include facts that the employee initially omitted. *Walcott v. Texas S. Univ.*, No. 01-12-00355-CV, 2013 WL 593488, at *10 (Tex. App.—Houston [1st Dist.] Feb. 14, 2013, no pet.) (mem. op.) (quoting *Cty. of Travis ex rel. Hamilton v. Manion*, No. 03-11-00533-CV, 2012 WL 1839399, at *4 (Tex. App.—Austin May 17, 2012, no pet.) (mem. op.)).

Both the text message and the lawsuit occurred post-employment, but before Chesloff filed her intake questionnaire and her charge of discrimination. Neither was included in Chesloff's filings as an act of sexual harassment discrimination. Her allegations instead were confined to acts that had occurred during her employment, culminating with the last incident in March. Chesloff did not amend her charge to

21

include any later acts. Their omission from the charge bars them from consideration under the continuing violation doctrine. *See id.*

Even if these acts had been included in the charge, they fall outside the scope of a sexual harassment claim. Yeh sent the text message after Chesloff had left her employment and three months after the last complained-of act of harassment; the message contained no sexual content. Yeh's defamation suit, filed three months after Chesloff left her employment, formed the basis for Chesloff's retaliation claim. But the jury rejected that claim. The jury question asked whether the lawsuit was filed against Chesloff because she filed a sexual harassment complaint. The jury answered "no." Because Chesloff was no longer working in the hostile environment, we hold that these post-termination acts are not within her hostile environment claim. *See*, *e.g.*, *Laster v. City of Kalamazoo*, 746 F.3d 714, 731 (6th Cir. 2014) ("Unlike a Title VII anti-discrimination claim, 'the anti-retaliation provision does not confine the actions and harms it forbids to those that are related to employment or occur at the workplace.'") (quoting *Burlington N. & Santa Fe Ry. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409 (2006)). Filing a lawsuit against a former employee is a discrete act that is not inherently harassing conduct of the type prohibited by sexual harassment law. *See*, *e.g.*, *Bartosh*, 259 S.W.3d at 325–26 (holding that employee failed to preserve hostile work environment claim when only

timely allegation of discrimination was based on termination, because "[t]ermination is not itself harassing conduct").

Accordingly, we hold that the June 2009 and August 2009 post-employment acts did not revive Chesloff's sexual harassment claim.

## CONCLUSION

We hold that the complaint of discrimination on which the trial court's judgment is based was not timely filed as Texas Labor Code Chapter 21 requires. We therefore reverse that portion of the trial court's judgment based on Chesloff's Chapter 21 claims and render judgment that Chesloff take nothing on her counterclaims. [2]

Jane Bland
Justice

Panel consists of Chief Justice Radack and Justices Bland and Huddle.

---

[2] Because of our disposition, we need not reach the issues raised in Chesloff's cross-appeal of the trial court's damages award.