**Opinion issued December 6, 2018**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-18-00221-CV

————————————

### THE UNIVERSITY OF TEXAS – MD ANDERSON CANCER CENTER, Appellant

### V.

### RACHEL PHILLIPS, Appellee

On Appeal from the 334th District Court
Harris County, Texas
Trial Court Case No. 2017-49643

## MEMORANDUM OPINION

Appellee, Rachel Phillips, sued her employer, appellant, The University of

Texas – MD Anderson Cancer Center ("UTMDA"), for sex discrimination and

retaliation under the Texas Commission on Human Rights Act ("TCHRA").[1] UTMDA brings this interlocutory appeal,[2] challenging the trial court's denial of its plea to the jurisdiction. In its sole issue, UTMDA contends that the trial court lacked subject-matter jurisdiction over Phillips's claims because the evidence establishes that she did not timely exhaust her administrative remedies under the TCHRA.

We vacate the trial court's order and dismiss the case.

## Background

In 2013, Phillips began her employment as an administrative assistant at UTMDA. In November 2013, after having her first child and returning to work from maternity leave, Phillips utilized a facility at UTMDA for nursing mothers each day. Phillips alleged that, thereafter, UTMDA Department Administrator Aaron Walton began to harass her, including waiting for her outside the facility. On one occasion, Walton interrupted her while she was using the facility, asked to meet with her immediately, and humiliated her by forcing her to attend a meeting with colleagues while she was visibly "still lactating underneath her shirt."

Within a month after Phillips contacted the UTMDA Ombuds Office and an ombudsperson attempted to mediate, Walton and Operations Manager Gina Dimiceli began retaliating against Phillips by falsely accusing her of workplace violations.

---

[1]     *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055.

[2]     *See* TEX. CIV. PRAC. & REM. CODE ANN. § 51.014(a)(8).

Despite her having been punctual to work and having received positive performance reviews, Phillips was written up for being late to work.

In 2014, Phillips complained to UTMDA Vice Chair Bill Plunkett. Upon her attempt to resign, Plunkett proposed that she continue her employment and work part-time, with the possibility of being promoted to the position of Grant Program Coordinator. Later, however, Phillips was told that she could not be promoted because of her childcare duties, which would not allow her to work remotely.

In 2015, during a UTMDA party, Phillips and her husband told Walton that they were expecting a second child, and he responded, "[T]hat is going to cost you." Subsequently, after Phillips returned from maternity leave, Walton again began to harass and discriminate against her. He was resistant to her requests to use the key to access the facility for nursing mothers. On one or more occasions, upon exiting the facility, Phillips again found Walton standing outside the door and looking inside. On one occasion, Walton commented to her that she was "disgusting." Phillips was also reprimanded for wearing maternity clothes, while other employees were allowed to wear flip-flop sandals and to expose tattoos. After Walton and Dimiceli began heavily scrutinizing Phillips's attendance, conduct, and work performance, and accused her of falsifying her "badge times," Phillips's employment was terminated.

At a meeting on March 14, 2016, Walton, on behalf of UTMDA, presented Phillips with an "Intent to Terminate" letter, stating, in pertinent part, as follows:

> It is my intent to terminate your employment for unacceptable conduct for falsification of time. . . .
>
> In October 2015, a complaint was received from your manager concerning your availability during work hours. Upon an investigatory audit, it revealed that between the period of October 1, 2015 and March 1, 2016 there were approximately 28 instances where you had an unscheduled PTO request, did not work your scheduled shift or failed to badge during a shift. It also revealed that between January 1, 2016 and March 1, 2016, you were out of the building on 10 incidents for periods of time ranging from 1 to 3 hours. You were clocked in and being paid during those times and there [were] no apparent work tasks that needed to be done outside the building.
>
> You will have an opportunity to provide a written response as to why this termination should not occur. . . .
>
> You will not be required to report to work during this time period. However, you will be required to remain available and fully cooperate with any requests for information until a final decision is communicated to you.
>
> You are required to return your identification badge and all other University of Texas property to me pending the final decision about your employment. If a decision is made not to terminate your employment, you will be notified of the decision and I will make arrangements to reinstate you and your badge and institutional property will be returned.

Phillips signed the letter, indicating her receipt, and signed a "Demotion/Suspension/ Termination Disciplinary Record."

On March 17 and 28, 2016, Phillips sent email responses to UTMDA human resources personnel regarding her concerns that she had been the target of discrimination.

4

On April 19, 2016, Walton, on behalf of UTMDA, sent Phillips a "Termination Decision" letter, stating, in pertinent part, as follows:

This Letter is to inform you of the termination of your employment with [UTMDA] effective immediately. The decision to terminate your employment was based on your violation of conduct and attendance expectations in accordance with [UTMDA's] Disciplinary Action Policy.

An "Intent to Terminate" memorandum was presented to you on 3/14/2015 that outlined the violations. You were subsequently provided an opportunity to respond to the "Intent to Terminate" memorandum before a final decision was made. I reviewed your response and did not find that you provided new or different information that would change the decision to terminate your employment. In view of these circumstances and as noted above, your employment with [UTMDA] will be terminated effective 4/15/2016. Your employment record will also reflect that you will not be eligible to be rehired in the future.

Please return your identification badge and any [UTMDA] issued property and equipment that is still in your possession immediately. . . .

On October 11, 2016, Phillips filed with the Texas Workforce Commission ("TWC") and Equal Employment Opportunity Commission ("EEOC") a "Charge of Discrimination" ("TWC complaint") against UTMDA. In her TWC complaint, which she attached to her petition, Phillips alleged that, beginning in November 2013 and continuing until March 2016, UTMDA, through its employees, discriminated against her on the basis of, as pertinent here, sex and that it retaliated against her by firing her. Namely, as discussed above, her supervisor and manager subjected her to employment actions not required of similarly situated personnel who were not female. She was also informed that, based on her childcare duties, she could not be

5

promoted. Phillips asserted that gender was the motivating factor in UTMDA's decision to take adverse employment action against her. Further, UTMDA employees retaliated against her for reporting the discriminatory actions. After she complained to Plunkett, Walton and Dimiceli falsified allegations of work misconduct in order to terminate her employment, and her employment was subsequently terminated. Subsequently, the TWC issued Phillips a right-to-sue letter, and she filed the instant lawsuit.

UTMDA filed a plea to the jurisdiction, arguing that Phillips's suit was barred by sovereign immunity because she did not timely exhaust her administrative remedies by filing a TWC complaint within 180 days of the allegedly discriminatory acts.[3] UTMDA asserted that the 180-day period begins when an employee is informed of an allegedly discriminatory employment decision, not when that decision comes to fruition. It asserted that the jurisdictional evidence establishes that it informed Phillips on March 14, 2016 of its intent to terminate her employment. Thus, the deadline for her to file any administrative complaint was September 10, 2016. Because it is undisputed that she did not file her TWC complaint until October 11, 2016, her claims are barred.

---

[3] *See* TEX. LAB. CODE ANN. § 21.202(a) ("A complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred.").

6

In her response to the plea, Phillips argued that she timely exhausted her administrative remedies because only a "final decision triggers the commencement of the statutory limitations period of 180 days." She asserted that the period commenced when UTMDA formally and finally terminated her employment in its April 19, 2016 "Termination Decision" letter. In the April letter, which Phillips incorporated into her response, UTMDA noted that it had previously provided Phillips an opportunity to respond "before a final decision was made" and that her employment would be terminated "effective 4/15/2016." The letter also states that Phillips's employment was terminated "effective immediately," i.e., April 19, 2016. Phillips asserted that, whether she was terminated on April 15 or 19, 2016, her October 11, 2016 TWC complaint was filed within the 180-day limitations period.

In its reply in support of its plea, UTMDA again argued that an adverse employment action accrues when a plaintiff is informed of an alleged discriminatory employment action, and not when the action comes to fruition. And, it is undisputed that UTMDA informed Phillips on March 14, 2016 of its intent to terminate her employment. UTMDA attached to its reply a copy of the March 14, 2016 letter.

After a hearing, the trial court denied UTMDA's plea to the jurisdiction.

**Plea to the Jurisdiction**

In its sole issue, UTMDA argues that the trial court erred in denying its plea to the jurisdiction because the evidence establishes that Phillips did not exhaust her

7

administrative remedies by timely filing a TWC complaint. Thus, its immunity is not waived, and the trial court lacked subject-matter jurisdiction over her claims.

## I. *Standard of Review*

We review de novo a trial court's ruling on a jurisdictional plea. *See Ben Bolt-Palito Blanco Consol. Indep. Sch. Dist. v. Tex. Political Subdivisions Prop./Cas. Joint Self-Ins. Fund*, 212 S.W.3d 320, 323 (Tex. 2006); *City of Hous. v. Vallejo*, 371 S.W.3d 499, 501 (Tex. App.—Houston [1st Dist.] 2012, pet. denied). A plea to the jurisdiction is a dilatory plea that seeks dismissal of a case for lack of subject matter jurisdiction. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Villarreal v. Harris Cty.*, 226 S.W.3d 537, 541 (Tex. App.—Houston [1st Dist.] 2006, no pet.). A plea to the jurisdiction may be utilized to challenge whether the plaintiff has met its burden of alleging jurisdictional facts or to challenge the existence of jurisdictional facts. *See Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 226–27 (Tex. 2004).

Review of a plea challenging the existence of jurisdictional facts, as here, mirrors that of a matter-of-law summary-judgment motion. *Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012); *City of Hous. v. Guthrie*, 332 S.W.3d 578, 587 (Tex. App.—Houston [1st Dist.] 2009, pet. denied) ("[T]his standard generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c) . . . . By requiring the [political subdivision] to meet the

8

summary judgment standard of proof . . . , we protect the plaintiffs from having to put on their case simply to establish jurisdiction."); *see also* TEX. R. CIV. P. 166a(c). "[A] court deciding a plea to the jurisdiction . . . may consider evidence and must do so when necessary to resolve the jurisdictional issues raised." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 555 (Tex. 2000). A court may consider evidence as necessary to resolve a dispute over the jurisdictional facts even if the evidence "implicates both the subject matter jurisdiction of the court and the merits of the case." *Miranda*, 133 S.W.3d at 226. We take as true all evidence favorable to the nonmovant and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Id.* at 228. If the defendant meets its burden to establish that the trial court lacks jurisdiction, the plaintiff is then required to show that there is a material fact question regarding the jurisdictional issue. *Id.* at 227–28. If the evidence raises a fact issue regarding jurisdiction, the plea cannot be granted, and a fact finder must resolve the issue. *Id.* On the other hand, if the evidence is undisputed or fails to raise a fact issue, the plea must be determined as a matter of law. *Id.* at 228; *Garcia*, 372 S.W.3d at 635.

## II.   Sovereign Immunity

Sovereign immunity deprives a trial court of subject-matter jurisdiction for lawsuits in which the state or certain governmental units have been sued unless the

9

state consents to suit.[4] *Tex. Parks & Wildlife Dep't*, 133 S.W.3d at 224. UTMDA is a governmental agency of the State of Texas; it is a "[m]edical and dental unit" of The University of Texas System. *See* TEX. EDUC. CODE ANN. §§ 61.003(5); 65.02(a)(11). "State universities are agencies of the State and enjoy sovereign immunity." *Bansal v. Univ. of Tex. MD Anderson Cancer Ctr.*, 502 S.W.3d 347, 353 (Tex. App.— Houston [14th Dist.] 2016, pet. denied) (quoting *Hencerling v. Tex. A&M Univ.*, 986 S.W.2d 373, 374 (Tex. App.— Houston [1st Dist.] 1999, pet. denied)).

The legislature has provided a limited waiver of immunity from suit for employment discrimination and retaliation claims falling within the scope of the TCHRA. *See* TEX. LAB. CODE ANN. §§ 21.051, 21.055; *Prairie View A&M Univ. v. Chatha*, 381 S.W.3d 500, 513 (Tex. 2012); *Garcia*, 253 S.W.3d at 660. The TCHRA provides that an employer commits an "unlawful employment practice" if, because of race, color, disability, religion, sex, national origin, or age, the employer:

> (1)    fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment; or

---

[4] "Sovereign immunity" and "governmental immunity" are sometimes treated as interchangeable terms. *See Reata Constr. Corp. v. City of Dall.*, 197 S.W.3d 371, 374 n.1 (Tex. 2006). Sovereign immunity is available to the state and its agencies, and governmental immunity is available to political subdivisions. *Harris Cty. v. Sykes*, 136 S.W.3d 635, 638 (Tex. 2004); *Univ. of Tex. M.D. Anderson Cancer Ctr. v. King*, 329 S.W.3d 876, 878 n.1 (Tex. App.—Houston [14th Dist.] 2010, pet. denied).

10

> (2) limits, segregates, or classifies an employee or applicant for employment in a manner that would deprive or tend to deprive an individual of any employment opportunity or adversely affect in any other manner the status of an employee.

TEX. LAB. CODE ANN. § 21.051. Further, an employer commits an unlawful employment practice if it retaliates or discriminates against a person who opposes a discriminatory practice or makes or files a charge or complaint. *Id.* § 21.055.

"[A] claimant can bring suit under the TCHRA against a governmental entity only after [the] claimant strictly satisfies the procedural requirements outlined in the TCHRA." *Chatha*, 381 S.W.3d at 513–14. The claimant must first file a sworn, written complaint with the TWC "not later than the 180th day after the date the alleged unlawful employment practice occurred." TEX. LAB. CODE ANN. §§ 21.201– .202; *see Yeh v. Chesloff*, 483 S.W.3d 108, 112–13 (Tex. App.—Houston [1st Dist.] 2015, pet. denied). This is a mandatory statutory requirement and claims that are not timely filed are jurisdictionally barred. *Chatha*, 381 S.W.3d at 514; *Davis v. Autonation USA Corp.*, 226 S.W.3d 487, 491 (Tex. App.—Houston [1st Dist.] 2006, no pet.).

With respect to when an unlawful employment practice accrues, the Texas Supreme Court has held: "Our precedent establishes that the 180–day limitations period in the TCHRA begins 'when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition.'" *Chatha*, 381 S.W.3d at 516 (quoting *Specialty Retailers, Inc. v. DeMoranville*, 933

11

S.W.2d 490, 493 (Tex. 1996)); *see also Delaware State College v. Ricks*, 449 U.S. 250, 258, 101 S. Ct. 498, 504 (1980) ("The proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts become most painful." (internal quotations omitted)). That an employee may have felt the effects of discriminatory treatment later, or that the damage may continue to occur for an extended period of time after the discriminatory treatment, does not extend the commencement of limitations. *Specialty Retailers*, 933 S.W.2d at 493. This Court has concluded that an unlawful employment practice occurs on the date that the "terms and conditions of . . . employment [are] affected." *Davis*, 226 S.W.3d at 492 (discussing *Specialty Retailers*, 933 S.W.2d at 491); *see also* TEX. LAB. CODE ANN. § 21.051.

## III. Analysis

We address each of Phillips's claims to determine whether UTMDA conclusively established its immunity from suit. *See Univ. of Hous. Main Campus v. Simons*, No. 01-02-00368-CV, 2002 WL 31388906, at *1 (Tex. App.—Houston [1st Dist.] Oct. 24, 2002, no pet.).

### A. *Sex Discrimination*

The evidence shows that Phillips asserted in her TWC complaint that the "[l]atest" date that discrimination took place was in "March 2016." She asserted that in "March of 2016," she was told to relocate her desk closer to Walton and that

12

he began to "pester" her by asking her the reasons that she was frequently away from her desk; Walton resisted her requests to use the key to access the facility for nursing mothers; and she "sometimes" found Walton waiting for her outside the facility. In addition, she was reprimanded for wearing jeans, which were actually maternity clothes, although other employees were allowed to wear flip-flop sandals and to expose tattoos.

Phillips does not allege any gender-motivated discriminatory acts occurring after "March 2016." Thus, she was required to file any administrative complaint regarding such acts, i.e., those occurring on or before March 31, 2016, within 180 days thereafter, or no later than September 27, 2016. *See* TEX. LAB. CODE ANN. §§ 21.201–.202; *Yeh*, 483 S.W.3d at 112–13. It is undisputed that Phillips did not file her complaint until October 11, 2016.

Because the evidence conclusively establishes that Phillips filed her TWC complaint more than 180 days after the discriminatory acts of which she complains, the trial court erred in denying UTMDA's plea to the jurisdiction as to Phillips's claims based on sex discrimination. *See Miranda*, 133 S.W.3d at 228 (holding that if evidence is undisputed or fails to raise fact issue, plea must be determined as matter of law).

2.    *Retaliatory Discharge*

13

UTMDA argued in its plea that the evidence conclusively establishes its immunity from Phillip's retaliatory-termination claim because the 180-day period began to run on March 14, 2016, the date that it informed Phillips of its intent to terminate her employment and affected the terms and conditions of her employment, i.e., required her to surrender her badge and UTMDA property and told her not to report to work.

In *Specialty Retailers*, the complainant alleged that her employer had discriminated against her by favoring younger workers and continually criticizing her and requiring her to work after hours. 933 S.W.2d at 491. On April 8, 1991, the complainant took medical leave from her job. *Id.* at 492. On May 10, 1991, her employer informed her that she was being replaced as a buyer and that, according to company policy, she would be fired if her leave lasted longer than one year. *Id.* The complainant did not return to work and was terminated on either April 8, 1992 (according to the complainant) or May 1, 1992 (according to the employer). *Id.* On June 2, 1992, the complainant filed an administrative complaint, alleging that a discriminatory employment decision had occurred on April 8, 1992. *Id.* The supreme court concluded that the 180-day period "begins when the employee is informed of the allegedly discriminatory employment decision, not when that decision comes to fruition." *Id.* at 493. The court held that, even if the termination of the complainant's employment in 1992 could be considered a discriminatory act,

14

her complaint was nevertheless untimely because she was notified on May 10, 1991, that it intended to terminate her if she did not return to work within one year of the start of her medical leave. *Id.* Because the complainant did not file her TWC claim within 180 days after May 10, 1991, her complaint was not timely filed. *Id.*

In *Davis*, the complainant filed a charge of discrimination against her employer, alleging actions that occurred between April 1, 2001 and January 2, 2002. 226 S.W.3d at 490. She further alleged that, on November 9, 2001, she was reprimanded for not meeting performance standards and was told that she could either transfer to a different department or be terminated. *Id.* at 492. She was told to take a couple of days and think about it. *Id.* After accepting the transfer and a significant decrease in her salary, she resigned. *Id.* at 489. On June 5, 2002, she filed a charge of discrimination against her employer. *Id.* at 490. We concluded that the date of the alleged discriminatory employment decision was November 9, 2001, the date that the terms and conditions of the complainant's employment were affected. *Id.* at 492. We held that her complaint was untimely because she did not file it within 180 days of November 9, 2001. *Id.*

Here, the evidence is undisputed that UTMDA informed Phillips on March 14, 2016 of its intent to terminate her employment. And, Phillips was instructed to surrender her badge and UTMDA property and told not to report to work. Thus, the 180-day administrative-filing period commenced on March 14, 2016, the date that

15

Phillips was informed of UTMDA's intent to terminate her employment, not when the decision later came to fruition, and the date that her terms and conditions of her employment were affected. *See Specialty Retailers*, 933 S.W.2d at 493; *Davis*, 226 S.W.3d at 492. It is undisputed that Phillips filed her TWC complaint 211 days later, on October 11, 2016. Thus, her complaint was not filed within the requisite 180-day period. *See Specialty Retailers*, 933 S.W.2d at 493; *Davis*, 226 S.W.3d at 492; *see also Abbott v. Rankin*, No. 06-07-00149-CV, 2008 WL 5156453, at *4 (Tex. App.— Texarkana Dec. 10, 2008, pet. denied.) (mem. op.) (holding that "limitations clock" began to run on day employee "received news of his demotion for failure to meet performance standards"). Because UTMDA met its burden to establish that the trial court lacked jurisdiction, Phillips was then required to demonstrate a material fact question regarding the jurisdictional issue. *See Miranda*, 133 S.W.3d at 227–28.

Phillips argued that her TWC complaint was timely filed because the 180-day period did not begin to run until April 15, 2016, when she received UTMDA's formal and final "Termination Decision." Relying on *Thurman v. Sears, Roebuck & Co.*, 952 F.2d 128, 133–34 (5th Cir. 1992), she asserted that the period commences when an employee "receives unequivocal notice of his termination or when a reasonable person would know of [her] termination." Phillips asserted that she "would not know of her termination" based on the March 14, 2016 letter of "Intent to Terminate." Specifically, the March letter lacks unequivocal notice because it

16

conditions her termination on a failure to provide a written response, and that she did so respond. Further, the April letter states that a final decision was made, which suggests that a final decision was not made in connection with the March letter.

*Thurman* does not support Phillips's argument because it is inapplicable to this case. There, the court held that a "leave of absence" did not sever the employment relationship and did not start the statute of limitations running on a claim of discriminatory discharge based on the filing of a claim under the Texas Workers' Compensation Act. 952 F.2d at 136.

As discussed above, the limitations period applicable to Phillips's claims under the TCHRA commenced on March 14, 2016, when Phillips was informed of UTMDA's intent to terminate her employment, and not when that decision later came to fruition, and when the terms and conditions of her employment were first affected. *See Specialty Retailers*, 933 S.W.2d at 493; *Davis*, 226 S.W.3d at 492; *see also Johnson & Johnson Med., Inc. v. Sanchez*, 924 S.W.2d 925, 929 (Tex. 1996) ("[W]hen determining the time at which a cause of action accrues in discrimination cases, [t]he proper focus is upon the time of the discriminatory acts, not upon the time at which the consequences of the acts [result in termination]." (internal quotations omitted)).

We conclude that UTMDA established as a matter of law that Phillips did not file her TWC complaint within 180 days of when she "first learned about the

17

discriminatory acts." *See Davis*, 226 S.W.3d at 492.  Thus, Phillips's discrimination and retaliation claims are barred by sovereign immunity and the trial court lacks subject-matter jurisdiction over the suit.  Accordingly, we hold that the trial court erred in denying UTMDA's plea to the jurisdiction.

We sustain UTMDA's sole issue.

## Conclusion

We vacate the trial court's order denying UTMDA's plea to the jurisdiction and dismiss the case.  *See* TEX. R. APP. P. 43.2(e).

Sherry Radack
Chief Justice

Panel consists of Chief Justice Radack and Justices Jennings and Bland.