ANN CRAWFORD McCLURE, Chief Justice *243 The Texas Department of Aging and Disability Services, which identifies itself with the acronym DADS, brings this appeal from the denial of its plea to the jurisdiction. On appeal DADS questions whether several allegations in an amended petition were timely raised after they were filed administratively, or for some allegations, whether they were administratively raised at all. Another issue is whether Lagunas has presented a prima facie claim for failure to promote/hire sufficient to confer jurisdiction. We affirm in part and reverse in part.
FACTUAL SUMMARY[1]
DADS runs the El Paso State Supported Living Center (the "State Center") which provides residential treatment and training services for people with intellectual and developmental disabilities. In 2013, Laura Cazabon-Braley was the Director of the State Center. Organizationally, the State Center also had an Assistant Director of Programs. In early 2013, Ruben Ochoa was the acting Assistant Director of Programs. Beneath him was a Unit Director, identified in our records as Adriane Hanway. Beneath her were two Assistant Unit Directors positions. Graphically, the relevant portion of the structure in February 2013 was as follows:
*244 This case arises out of an opening for the one the Assistant Unit Director positions which was posted in February 2013. Michael Lagunas, who has worked at the State Center as a security/safety officer since 2010, applied for the position. Lagunas was sixty years old at the time. Several others submitted applications, including an applicant younger than forty years of age. Ruben Ochoa believed that Laura Cazabon-Braley had delegated to him the authority to make the hiring decision for the position. After the interviews, Ochoa concluded that Lagunas was qualified and the best candidate for the position. Ochoa intended for Lagunas to start in the new position on March 25, 2013, and Ochoa completed his part of the necessary paperwork. But before he could submit the paperwork to the personnel department, he was directed to send it to Laura Cazabon-Braley (a departure from the usual process). Cazabon-Braley then informed Ochoa that she "did not want me to hire Mr. Lagunas." She decided to conduct her own interviews and had Ochoa re-post the position. No one was actually interviewed for the Assistant Unit Director position following the re-posting. Instead, both Assistant Unit Director positions were temporarily filled by two younger persons, Joana Alfrez and Alice Villalobos.
In April 2013, Ruben Ochoa was removed as the acting Assistant Director of Programs. Laura Cazabon-Braley then reorganized the department, essentially replacing the existing Unit Director and two Assistant Unit Director slots with just two Unit Directors. Both Unit Director positions were filled by persons in their thirties. Cazabon-Braley swore that the majority of centers around the State have this two Unit Director structure (sometimes also termed "Residential Directors" or "Directors of Residential Services") and that after the acting Assistant Director of Programs and the second Assistant Unit Director positions were vacated, she took the opportunity to reorganize the unit to follow that statewide model. Ochoa swore that her claim about how the majority of other facilities are structured is "false" and that she did not want Lagunas as an Assistant Unit Director because of his age.
Lagunas did not apply for the newly created Unit Director position. DADS contends this was because the posted qualifications for those two new positions required a bachelor's degree which Lagunas did not possess.[2]
PROCEDURAL BACKGROUND
On May 17, 2013, which would have been after the Assistant Unit Director position was re-posted, Lagunas filed a Charge of Discrimination with the Civil Rights Division of the Texas Workforce Commission and the EEOC. The charge alleged that around March 25, 2013, he applied for the Assistant Unit Director position. A month later, he was informed that the positon had not been offered to anyone. In mid-May, he internally complained to DADS' human resources department about the "unorthodox and unfair process conducted in trying to fill this position." The charge alleged *245 age discrimination. It was closed by the EEOC on May 21, 2013, and the Texas Workforce Commission on July 21, 2014 with "right to sue" letters.
On January 31, 2014, and February 11, 2014, Lagunas filed two additional charges of discrimination.[3] The new charges complained of various acts of discrimination and retaliation occurring after May 15, 2013, and May 17, 2013. The particulars included: (1) a complaint about being reassigned; (2) denial of a merit pay increase; (3) verbal and physical threats; (4) being accused of unfounded charges; (5) discrimination in scheduling; (6) denial of overtime pay; (7) being excluded from necessary job information, and (8) being restricted in his communications to others. One of the new charges was administratively resolved through the issuance of a right sue letter dated June 20, 2014.
On July 18, 2014, Lagunas filed his Original Petition in this case. The substantive factual assertions in the "Facts" section of the Original Petition are contained in these four sentences:
On or about March 25, 2013, Plaintiff applied for the Assistant Director of Residential Services position with Defendant. Plaintiff was 60 years old at the time he applied and was qualified for the position. Defendant unlawfully discriminated against plaintiff when they denied the promotion as a result of age discrimination in violation of Texas Labor Code Section 21.000 et seq. The position of Assistant Director of Residential Services was assigned to 2 similarly situated employees under the age of 40.
The petition then referenced the May 17, 2013 charge of discrimination. As noted above, that charge specifically referenced the re-posting of the position and "unorthodox and unfair process" used to try and fill this position. Under its "Causes of Action" section, the petition incorporated by reference the factual statement and then stated nothing more than Lagunas "believes that he has been discriminated against because of his age" which is unlawful discrimination in violation of the Texas Labor Code.
DADS answered the suit and filed a plea to the jurisdiction claiming that for the single claim made, Lagunas could not make out a prima facie case because a younger person was not hired for the Assistant Unit Director position; in fact, no one was hired for that post. Instead, the reorganization resulted in two new positions being posted, which Lagunas did not bid on and which he was not qualified to perform. The Plea to the Jurisdiction was set hearing on March 7, 2016.
On the day of the hearing, Lagunas filed his First Amended Petition, which repeated the failure to hire/promote allegations noted above, but also asserted other allegations of age discrimination.[4] Those *246 additional claims included the matters raised in his January and February 2014 charges of discrimination, including that: (1) he was placed on administrative reassignment or disciplined based on unsubstantiated charges; (2) he was denied a merit pay increase; (3) he was treated differently with respect to scheduling (swapping days and weekends); (4) he was treated differently with respect to overtime pay; (5) he was required to communicate via email when younger workers had no such restriction; (6) he was given a "third level reminder" in the progressive disciplinary system; and (7) similarly, he was unjustly given a Notice of Possible Disciplinary Action (NOPDA) for driving too fast on the facility.
DADS responded with an Amended Plea to the Jurisdiction contending that the additional allegations in the amended complaints were procedurally barred. It also reasserted its claims that the failure to hire/promote claim was barred because a younger person was not hired into the position. The trial court denied the plea and DADS now appeals. See TEX.CIV.PRAC. & REM. CODE ANN. § 51.014(a)(8) (West Supp. 2016)(authorizing interlocutory appeal from order granting or denying a plea to the jurisdiction filed by a governmental unit).
PLEAS TO THE JURISDICTION IN TCHRA CLAIMS
State agencies such as DADS are protected by sovereign immunity other than for claims for which immunity has been waived by the legislature. Tex. Parks & Wildlife Dep't v. Sawyer Trust , 354 S.W.3d 384, 388 (Tex. 2011) ; Tex. Dep't of Parks & Wildlife v. Miranda , 133 S.W.3d 217, 224 (Tex. 2004) ; Texas Dept. of Aging and Disability Serv. v. Beltran , 350 S.W.3d 410, 413 (Tex.App.-El Paso 2011, pet denied) (noting DADS status as State agency). A governmental unit's sovereign immunity deprives a trial court of subject matter jurisdiction. Miranda , 133 S.W.3d at 225-26 ; Tirado v. City of El Paso , 361 S.W.3d 191, 194 (Tex.App.-El Paso 2012, no pet.). The Legislature has created a limited waiver of immunity for claims properly brought under Texas Commission on Human Rights Act (TCHRA). Mission Consol. Indep. Sch. Dist. v. Garcia , 372 S.W.3d 629, 636 (Tex. 2012). That waiver, however, extends only "for those suits where the plaintiff actually alleges a violation of the TCHRA by pleading facts that state a claim thereunder." Garcia , 372 S.W.3d at 636. Absent a pleading stating a prima facie case, the State's immunity from suit has not been waived. Id .
A governmental entity may challenge the existence of that prima facie case through a plea to the jurisdiction. Miranda , 133 S.W.3d at 225-26 ; Bland Independent School Dist. v. Blue , 34 S.W.3d 547, 554 (Tex. 2000) ; Univ. of Texas at El Paso v. Ochoa , 410 S.W.3d 327, 330 (Tex.App.-El Paso 2013, pet. denied). The plea might attack the face of the pleading, but it may also include evidence which thereby places into issue the existence of a jurisdictional fact. Miranda , 133 S.W.3d at 226-27 ; College of the Mainland v. Glover , 436 S.W.3d 384, 391 (Tex.App.-Houston [14th Dist.] 2014, pet. denied). In this case, DADS has presented evidence in support of its plea to the jurisdiction.
When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. Miranda , 133 S.W.3d at 226. "If there is no question of fact as to the jurisdictional issue, the trial *247 court must rule on the plea to the jurisdiction as a matter of law." City of El Paso v. Heinrich , 284 S.W.3d 366, 378 (Tex. 2009). "If, however, the jurisdictional evidence creates a fact question, then the trial court cannot grant the plea to the jurisdiction, and the issue must be resolved by the fact finder." Id. "This standard mirrors our review of summary judgments" where the reviewing court takes as true all evidence favorable to the non-movant, indulging every reasonable inference and resolving any doubts in the non-movant's favor. Id. We review the issue of whether a trial court has subject matter jurisdiction de novo. Miranda , 133 S.W.3d at 226-27 ; State Dept. of Highways and Public Transp. v. Gonzalez , 82 S.W.3d 322, 327 (Tex. 2002).
TIMELINESS AND EXHUASTION
In DADS first issue, it challenges the jurisdiction of the trial court to hear the claims arising from the additional factual allegations contained in Lagunas' First Amended Petition. DADS contends that these new paragraphs (numbered fourteen through twenty-six) raise claims which are new and distinct from the original pleading. Two of the new allegations (receiving a "third level reminder" in the progressive disciplinary system and the NOPDA for driving too fast on the facility) were never raised before the Texas Workforce Commission or the EEOC, and thus have not been administratively exhausted. For the balance of the new allegations, DADS contends that Lagunas did not file suit within the two-year period required by the Labor Code. We agree.
A worker desiring to file a TCHRA lawsuit must: (1) file a complaint with the Texas Workforce Commission within 180 days of the alleged discriminatory act; (2) allow the Commission to dismiss or resolve the complaint within 180 days before filing suit; and (3) file suit no later than two years after the complaint is filed. See TEX.LABOR CODE ANN. §§ 21.201 -.202, .208, .256 (West 2015). This process affords the administrative agency the opportunity to investigate the allegation, informally eliminate any discrimination, and minimize costly litigation. El Paso County v. Navarrete , 194 S.W.3d 677, 683-84 (Tex.App.-El Paso 2006, pet. denied).
Under the Government Code, "[s]tatutory prerequisites to a suit, including the provision of notice, are jurisdictional requirements in all suits against a governmental entity." TEX.GOV'T CODE ANN. § 311.034 (West 2013). This provision reflects the Legislature's intent that all statutory prerequisites are jurisdictional requirements as to governmental entities and are properly asserted in a plea to the jurisdiction. Prairie View A & M Univ. v. Chatha , 381 S.W.3d 500, 511 (Tex. 2012) (so holding for 180-day filing requirement of charge of discrimination); see Univ. of Tex. Sw. Med. Ctr. at Dallas v. Estate of Arancibia, 324 S.W.3d 544, 546 (Tex. 2010) (so holding for tort claims six-month notice requirement). The failure to comply with the prerequisites jurisdictionally bars the claim. Chatha , 381 S.W.3d at 515 ("Thus, a statutory prerequisite to suit, whether administrative (such as filing a charge of discrimination) or procedural (such as timely filing a lawsuit) is jurisdictional when the defendant is a governmental entity."); In re United Services Auto. Ass'n, 307 S.W.3d 299, 308 (Tex. 2010) (noting that Labor Code filing deadlines are jurisdictional in suits against governmental entities).
We have carefully reviewed all three of the charges of discrimination actually filed in this matter, and do not find any reference to the "third level" disciplinary warning or the NOPDA issues which are contained in paragraphs twenty-five and twenty-six of the amended petition. The *248 amended pleading in fact stated DADS took these two actions well after all of the charges of discrimination had been filed. Lagunas does not specifically address these issues in his briefing to this Court, nor did he below. The trial court erred in not dismissing the discrimination suit as it pertains to these two factual allegations.
The other additional allegations asserted in the First Amended Petition are on a bit of a different footing. They were raised administratively either in the charge of discrimination filed on January 30, 2014 or February 11, 2014. The amended petition, however, was not filed until March 7, 2016, which was more than two years after the charge was administratively filed. TCHRA provides that a plaintiff must file suit within two years of the date he files a complaint with the Texas Workforce Commission. TEX.LABOR CODE ANN. § 21.256 ("A civil action may not be brought under this subchapter later than the second anniversary of the date the complaint relating to the action is filed."). The failure to meet that deadline denies jurisdiction to the trial court to hear the case. El Paso Indep. Sch. Dist. v. Alspini , 315 S.W.3d 144, 149 (Tex.App.-El Paso 2010, no pet.)
Lagunas attempts to counter this problem by arguing that DADS was on notice of these additional claims through the charges of discrimination which were on file as of the date of the Original Petition. He also contends that DADS never filed special exceptions to that Original Petition. Neither argument is persuasive.
The Original Petition contained what on its face is a failure to hire/promote claim. It makes no factual allegations that in anyway reference retaliation for asserting Lagunas' rights under the TCHRA. Nor does it reference any factual assertion remotely mentioning the making of false allegations, failure to pay overtime, failure to give a raise, or other workplace conditions complained about in the First Amended Petition. Many of these allegations are framed in the amended pleading as retaliatory acts motivated by Lagunas' filing his first charge of discrimination. Retaliation, however, is a distinct legal theory from discrimination. See Univ. of Texas v. Poindexter , 306 S.W.3d 798, 809 (Tex.App.-Austin 2009, no pet.) ; Navarrete , 194 S.W.3d at 683-84 (retaliation was distinct from discrimination claim and was not in charge of discrimination); Davis v. Educ. Serv. Ctr. , 62 S.W.3d 890, 894 (Tex.App.-Texarkana 2001, no pet.) ("Retaliation is an independent violation of the TCHRA ...."). Nothing in the Original Petition hints at retaliation. Here, DADS would simply have no reason to file a special exception to determine if Lagunas was asserting new and different claims which are in no way alluded to in the pleading. The Huff Energy Fund, L.P. v. Longview Energy Co. , 482 S.W.3d 184, 198 (Tex.App.-San Antonio 2015, pet. granted) (when a plaintiff pleads none of the elements of a cause of action, the defendant is not obligated to file special exceptions to determine if plaintiff intended to assert the absent cause of action). DADS' knowledge that Lagunas had made other allegations in an administrative proceeding makes no difference.
The only legal theory than could salvage the newly added claims would be a relation back theory such that the newly added claims could piggyback off the suit's original filing date. See TEX.CIV.PRAC. & REM.CODE ANN. § 16.068 (West 2015) ("If a filed pleading relates to a cause of action, cross action, counterclaim, or defense that is not subject to a plea of limitation when the pleading is filed, a subsequent amendment or supplement to the pleading that changes the facts or grounds of liability or defense is not subject to a plea of limitation *249 unless the amendment or supplement is wholly based on a new, distinct, or different transaction or occurrence."). DADS contends that none of the "equitable tolling" theories apply to claims against governmental entities. See Little v. Tex. Bd. of Law Examiners , 334 S.W.3d 860, 864 (Tex.App.-Austin 2011, no pet.) ("the tolling provision of [ Texas Civil Practice and Remedies Code § 16.064 ] is inapplicable to a jurisdictional statutory prerequisite to suit against a governmental entity"); Goss v. City of Houston , 391 S.W.3d 168, 173-74 (Tex.App.-Houston [1st Dist.] 2012, no pet.) (rejecting federally created equitable tolling when agency misleads worker, or fails to timely close out administrative claim); but cf . Zamora v. Tarrant County Hosp. Dist., 510 S.W.3d 584, 590-91, 2016 WL 1403254, at *4 (Tex.App.-El Paso Apr. 8, 2016, pet. denied) (permitting relation back for excusable delay in service process when suit itself is timely filed). We need not address that claim because Lagunas does not urge any type of tolling theory. We sustain DADS first issue and conclude that the trial court should have dismissed the discrimination and retaliation claims arising from the factual assertions in paragraphs fourteen to twenty-six of the First Amended Petition.[5]
FAILURE TO HIRE/PROMOTE CLAIM
In its second issue, DADS contends that Lagunas has failed to assert a prima facie case for the failure to hire/promote claim. This argument has two threads. First, DADS contends that no one was hired for the Assistant Unit Director position, and an essential element of Lagunas' case requires him to show a younger person was hired for the position. Lagunas responds that the elements of his case are not so tightly cabined, and that one of his theories is that DADS withdrew the Assistant Unit Director job and replaced it with the Unit Director position (with a qualification he was unable to meet). He contends this restructuring was part of its plan to discriminate against him based on age. In response to this theory, DADS contends the restructuring claim was never a part of his charge of discrimination below, and that because it has not been exhausted, he cannot assert it here. We start with that argument.
Exhaustion of the Restructuring Claim
Lagunas' lawsuit is limited to claims made in the charge of discrimination and factually related claims that can reasonably be expected to grow out of the commission's investigation. Yeh v. Chesloff , 483 S.W.3d 108, 118 (Tex.App.-Houston [1st Dist.] 2015, pet. filed) ; Santi v. Univ. of Texas Health Sci. Ctr. at Houston , 312 S.W.3d 800, 805 (Tex.App.-Houston [1st Dist.] 2009, no pet.) ; Elgaghil v. Tarrant County Junior Coll., 45 S.W.3d 133, 141 (Tex.App.-Fort Worth 2000, pet. denied) ; Thomas v. Clayton Williams Energy, Inc., 2 S.W.3d 734, 738 (Tex.App.-Houston [14th Dist.] 1999, no pet.). The tension in construing the scope of the charge of discrimination pits the employer' right to know the claims being made, versus the need for an administrative system which can accommodate lay persons unskilled in drafting complaints. Preston v. Texas Dept. of Fam. and Protective Services , 222 Fed.Appx. 353, 356-57 (5th Cir. 2007) (unpublished).
*250 In negotiating that tension, we liberally construe the administrative charge to determine whether it contains an adequate factual basis to put the employer on notice of the existence and nature of the charges. Santi , 312 S.W.3d at 805 ; Bartosh v. Sam Houston State Univ. , 259 S.W.3d 317, 321 (Tex.App.-Texarkana 2008, pet. denied). The crucial element of a charge of discrimination is the factual statement contained in the administrative complaint. Santi , 312 S.W.3d at 805. Courts should engage in a fact-intensive analysis of the statement given by the plaintiff in the administrative charge, and "look slightly beyond its four corners, to its substance rather than its label." Bartosh , 259 S.W.3d at 322, citing Pacheco v. Mineta , 448 F.3d 783, 789 (5th Cir. 2006).
Applying this formula, we conclude the May 17, 2013 charge of discrimination would have included the restructuring theory. The factual recitation on the charge form identified the Assistant Unit Director position that Lagunas interviewed for in March of 2013. It noted Lagunas was informed at the end of April 2013, that the position was still not filled and that "shortly" thereafter the position was "re-posted." It then stated that by mid-May he made a complaint that DADS was using and "unorthodox and unfair process" in trying to fill the position. He concluded by stating he was discriminated against based on his age. It is hard to imagine how any rudimentary investigation of these allegations would not have resulted in questions like who was hired for the post? If the position was not filled, why not? These questions would have elicited DADS' decision to reorganize the department, at which point the next logical question is why? What is the difference between the new "Unit Director" and the old "Assistant Unit Director" positions and who was hired for the new "Unit Director" post (and how old was that person)? Because the charge of discrimination set forth facts and claims which would have necessarily lead to the restructuring issue, we overrule that part of DADS's Issue Two which contends it was not administratively exhausted.
Lagunas' Prima Facie Case
DADS next claims that Lagunas has failed to make out a prima facie case of failure to promote. An employer commits an unlawful employment practice if it "fails or refuses to hire an individual, discharges an individual, or discriminates in any other manner against an individual in connection with compensation or the terms, conditions, or privileges of employment" based on age. TEX. LABOR CODE ANN. § 21.051. To survive the plea to the jurisdiction the employee must plead, or if properly challenged, present some evidence of a prima facie case. The employee could do so in one of two ways. The employee might have some direct evidence of discriminatory animus such as an admission by the decision-maker. See Williams-Pyro, Inc. v. Barbour , 408 S.W.3d 467, 478 (Tex.App.-El Paso 2013, pet. denied) (noting direct statements by decision maker in legal sufficiency review). But because that kind of evidence is difficult to come by, courts also permit a plaintiff to state a prima facie case through the so called McDonnell Douglas presumption. See McDonnell Douglas Corp. v. Green , 411 U.S. 792, 801-03, 93 S.Ct. 1817, 1820, 36 L.Ed.2d 668 (1973). So long as a plaintiff meets the "minimal" initial burden of establishing a prima facie case of discrimination, he is entitled to a presumption of discrimination. Mission Consol., 372 S.W.3d at 634. "Although the precise elements of this showing will vary depending on the circumstances, the plaintiff's burden at this stage of the case is not onerous." Id . at 634, quoting *251 Tex. Dept. of Community Affairs v. Burdine , 450 U.S. 248, 253, 101 S.Ct. 1089, 1094, 67 L.Ed.2d 207 (1981) (internal quotations omitted).
Under McDonnell Douglas, Lagunas must show four things. The parties here agree on the first three of those: (1) he was not hired; (2) he was qualified for the position for which he applied; (3) and he is a member of a protected class. Lagunas and DADS part ways on the fourth element. DADS, citing Mission Consol., contends that the fourth element requires a showing that someone younger was hired for the position.[6] DADS argues that the failure to show that a younger person was hired into the position is fatal to Lagunas' case. Conversely, Lagunas cites Fifth Circuit precedent that the fourth element has subparts. He believes the fourth element would require him to show either that he was: (a) replaced by another person outside of the protected class; (b) replaced by someone younger; or (c) otherwise not selected because of age. See McClaren v. Morrison Mgt. Specialists, Inc. , 420 F.3d 457, 462 (5th Cir. 2005).[7] Seizing on the "otherwise not selected because of age" element, Lagunas argues his restructuring claim meets that element. Lagunas emphasizes that McClaren is a failure to hire case. In response, DADS urges that in Mission Consol. the Texas Supreme Court expressly rejected the "otherwise not selected because of age" prong for true replacement cases, and held that in such a case, a plaintiff must show he or she was replaced by a younger worker.
While we do not adopt a broad open ended view of the fourth element for the prima facie case, we find reason to reject DADS' second issue. First, the trial court could have overruled the plea even without any reference to the restructuring claim. Lagunas proffered some evidence that by March 25, 2013, the person designated to make the hiring decision selected him for the position. Before the paperwork went through, however, additional persons were solicited to interview and the Assistant Unit Director position was filled, at least temporarily, by a person in her thirties. A fair reading of the affidavits below raises an inference that the decision to deny Lagunas the job was made before any decision to restructure the department. Even were the restructuring decision entirely justified when made, Lagunas would have a claim for not being selected to the Assistant Unit Director position in the interim. And had he been placed in that position, the entire time line for the reorganization might have changed. Laura Cazabon-Braley stated that she withdrew the posting for the Assistant Unit Director's position and restructured the department only after both Assistant Unit Director positions were vacant.
Additionally, the decision to seek more applicants and re-post the job (which occurred before the restructuring) would meet the elements the United States Supreme Court has described in failure to hire claims under federal employment discrimination law.
*252 Patterson v. McLean Credit Union , 491 U.S. 164, 186-87, 109 S.Ct. 2363, 2378, 105 L.Ed.2d 132 (1989) ("Here, petitioner need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.); McDonnell Douglas , 411 U.S. at 802, 93 S.Ct. at 1824 (fourth element of prima facie case described as "after his rejection, the position remained open and the employer continued to seek applicants from persons of complainant's qualifications").
The court has urged that some flexibility is necessary in framing the prima facie case to fit the facts in particular cases. Id . at 802, 93 S.Ct. at 1824 ("The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations."). Mission Consol . is a true replacement case and accurately describes the prima facie elements for that kind of case. But it could not be applied to a reduction in force case, where the displaced worker is by definition never replaced. Hall v. RDSL Enterprises LLC , 426 S.W.3d 294, 303 (Tex.App.-Fort Worth 2014, pet. denied) (applying modified fourth element in reduction in force case). We are not persuaded that Mission Consol. was intended to apply in every variant of an age discrimination claim.
The case on which DADS relies principally makes our point. In Bradley v. England, 502 F.Supp.2d 259 (D.R.I. 2007) the court granted in part and denied in part a summary judgment in a disability discrimination claim. The employee there had applied for an open position, but the employer decided not to fill the job permanently as the unit was likely to be privatized in the near future. Id . at 264-65. Another employee, however, was selected over the plaintiff to fill the post temporarily. Id . The trial court rejected the employer's summary judgment motion as it pertained to any discrimination in the denying the plaintiff at least the temporary position. Id . at 270-71. The decision-maker's statement that it did not want the plaintiff in the department "raised questions" about the employer's true motivation. Id . at 271.
Bradley granted the employer's summary judgment as it pertained to not hiring the plaintiff into the permanent position. Id . at 269. Because the posting was ultimately withdrawn, and no one was hired into the slot, the court agreed that plaintiff failed to meet his prima facie burden. Id . In that way, the case is similar to the situation here. But the plaintiff in Bradley offered no evidence that the reason the job posting was withdrawn-the impending privatization of the department-was false. In fact, the plaintiff had apparently agreed the privatization was the truthful reason for pulling down the job offering. Id . We understand Lagunas, however, to assert that the reason for the restructuring was a pretext. While DADS contends it changed the job description so as to bring the department in line with the rest of State, Lagunas has raised some evidence that this justification is false. Whether he can ultimately prove that contention is not before us. We only conclude he put forth enough jurisdictional evidence to meet his prima facie burden.[8]
*253 CONCLUSION
We sustain Issue One and remand with instructions that the Labor Code claims arising out of the factual allegations in paragraphs fourteen to twenty-six of the First Amended Petition be dismissed for want of jurisdiction. We overrule Issue Two and remand for further proceedings not inconsistent with this opinion.
Hughes, J., not participating

The facts we set forth are gleaned from affidavits and attached job descriptions contained in DADS Plea to the Jurisdiction, and Lagunas' response. We note where the affidavits conflict, and emphasize that the contentions of the affiants are just those-contentions-as yet unproven before a fact finder.

The job description for the original Assistant Unit Director position set as a screening criteria a "Bachelor's degree in a related field." The job description for the newly created Unit Director position required a "Bachelor's degree from an accredited college or university." Lagunas' employment application reflects he possesses a Bachelor of Science in Social Psychology-Human Development from Park University and an Associate's Degree in Criminal Justice from El Paso Community College. It is unclear on our record what disqualified Lagunas from the newly created position, but both party's briefs accept the premise that he lacks the necessary qualifications for the new position, and we assume it to be true in resolving this appeal.

He had earlier tried to file an amendment to his original charge of discrimination. A complaint may be amended to "clarify and amplify an allegation made in the complaint." Tex.labor Code Ann. § 21.201(e) (West 2015). So long as the amendment alleges additional facts that constitute unlawful employment practices that relate to or arise from the subject matter of the original complaint it "relates back to the date the complaint was first received by the commission." Id . at § 21.201(f). But the amendment came after the file had been administratively closed by the EEOC, and it was treated as a new charge.

The amended petition expanded the failure to hire allegation somewhat, noting that two younger persons were temporarily given the Assistant Unit Director position and remained in the position for six months to a year. The amended petition also claimed that another employee told Lagunas that he was too old for the job and "Laura Cazabon-Braly, did not want Plaintiff for the job because he was too old. It also referred not only to the Assistant Unit Director position, but also the "Assistant Director of Residential Services" which is how DADS named the position post restructuring.

DADS also alleges that many of those claims do not assert ultimate employment decisions and thus would not be actionable in any event. See Winters v. Chubb & Son, Inc. , 132 S.W.3d 568, 575 (Tex.App.-Houston [14th Dist.] 2004, no pet.) ("Title VII and Chapter 21 address ultimate employment decisions; they do not address every decision made by employers that arguably might have some tangential effect upon employment decisions."). We find it unnecessary to reach that issue.

"In a true replacement case, an age-discrimination plaintiff relying on the McDonnell Douglas burden-shifting framework must show that he or she was (1) a member of the protected class under the TCHRA, (2) qualified for his or her employment position, (3) terminated by the employer, and (4) replaced by someone younger."Mission Consol ., 372 S.W.3d at 642.

"In order to establish a prima facie case of age discrimination under the TCHRA in a non-selection or failure to hire case, McClaren must show that: (1) he was in the protected class; (2) he was qualified for the position sought; (3) he was not selected; and (4) he was either (a) replaced by another person outside of the protected class; (b) replaced by someone younger; or (c) otherwise not selected because of age." Id . (footnotes omitted).

Nor do we suggest that the evidence before us would be sufficient to sustain a verdict, because after a trial on the merits, a party can no longer rely on the McDonnell Douglas shifting burdens analysis. Wal-Mart Stores, Inc. v. Canchola , 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court. But when a discrimination case has been fully tried on its merits, as in this case, a reviewing court does not engage in a burden-shifting analysis.")(omitting citations). A plaintiff must then prove not just that a decision was a pretext, but must prove the decision was a pretext for discrimination. Id . at 740 ("The relevant inquiry is not whether the complaints made against Canchola were a pretext, but what they were a pretext for. ").